### SINGER v. LAMONT, CORLISS & CO.

(District Court, S. D. New York. December 29, 1914.)

PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—COMBINED CARTON AND DISPLAY DEVICE.

    The Singer patent, No. 880,410, for a combined carton and display device, *held* not anticipated, valid, and infringed.

In Equity. Suit by Joseph B. Singer against Lamont, Corliss & Co., a corporation, for infringement of claims 2, 3, and 4 of letters patent No. 880,410 for a combined carton and display device, granted to complainant February 25, 1908. On final hearing. Decree for complainant.

C. P. Goepel, of New York City, for complainant.
Clarence G. Galston, of New York City, for defendant.

MAYER, District Judge. In the manufacture of paper folding boxes, the practical men and the inventors seem to have worked along two general lines, somewhat different, although by the nature of the art necessarily also closely related. One line has to do with the manufacture of durable, well-made packages, whose sole purpose is to contain contents, while the other has to do with packages, which shall not only be efficient as containers, but which also will display the contents to the best advantage, and, by appropriate words or illustration, attract the attention of the customer.

Singer, who seems to have spent his business life in the printing and folding box business, was a salesman in the employ of the Nevins-Church Press when he made the invention in suit. In 1906 an official of one of the concerns which was a customer of Singer's employer told Singer that a more satisfactory display box was needed than Singer was then selling, and, after consultation with his principal, Singer undertook the effort of creating an improved form of box which should have the combined advantages of efficiency as a container and adaptability as a display medium.

Singer filed his application on November 13, 1906, and letters pat-

ent were issued to him on February 25, 1908. In 1909 and 1910 Singer was in the employ of the Lord Baltimore Press, the acknowledged real defendant in this suit, and during those years, and up to July, 1911, the Lord Baltimore Press paid Singer royalties under the license which he had granted to them. The defendant's box is a clear infringement, and that the Lord Baltimore Press realized the commercial value of the Singer device is demonstrated by its manufacture thereof since 1911.

This seemingly simple device has become from the start a marked commercial success, and Singer has now branched out as a manufacturer. Beginning with the sale of about 105,000 boxes for the two years 1906 and 1907, the Singer box attained an aggregate output of about 1,000,000 boxes for the years 1910 and 1911, and since then the sales have run to something over 400,000 boxes each year.

The reason for this success is apparent from an inspection of the commercial box, which, for its purposes, is clearly superior to any of its predecessors, and such is doubtless the opinion of the Lord Baltimore Press, as is evidenced by its conduct. Such must also be the view of the imposing array of merchants of small wares, from chocolates to shaving brushes, for whom Singer makes these boxes, and whose names and products have become familiar to us, when, after a weary day, we read the signs in the cars or watch the changing electric lighted figures on the roofs of the illuminated pathway.

What Singer did seems simple enough now. "My invention," he said, "has for its object a combined carton and display device, which may be used to contain packages of goods for shipment, and which may also be used on the counter by the retailer to display the goods attractively. To this end, it is desirable that the combined carton and display device be sufficiently strong to permit the safe handling of the carton and its contents, even though the weight be considerable; also that the carton will, when opened, present an attractive appearance, with considerable space for the reception of printing, pictures, or advertising matter. It is also desirable that this advertising matter be so located on the carton as to be protected from injury in transit or by handling. My improved carton meets these requirements, and also is so constructed that all the display printing comes on one side of the blank from which the carton is constructed. This permits stock which is finished on one side only to be used, and also saves printing on more than one side."

The claims here in controversy are:

"2. The improved carton and display device comprising a body having folded ends, a back display surface hinged to said body, a front display surface of the same size as the front wall of the carton and hinged to the upper edge of the said front wall, and wings attached to the said front display surface and adapted to be inserted between the contents of the carton and the ends thereof when the carton is folded and between the folded portions of the ends when the box is closed.

"3. The improved carton and display device provided with a front display surface hinged to the top edge of the front of the box and a tongue on the end of the said front display surface to hold the front display surface when in closed position by passing between the end of the box and the contents thereof, and to hold the said display surface parallel with the front wall of the box

when in open position by passing between the layers of cardboard composing the end of the box.

"4. The improved carton and display device provided with a back display surface having a bracket hinged thereto, and with a front display surface having hinged thereto a tongue, the said bracket and the said tongue being adapted to pass between the end of the box and the contents thereof to maintain the back display surface and the front display surface in closed position."

Briefly stated, the characteristics of the Singer box are that it can be readily, neatly, and securely folded so as to protect its contents, and, when open, it displays in convenient position a front and back display surface. By one printing operation, which necessitates glaze (if desired) on only one side, the expense which would attach to printing by two operations is manifestly lessened.

The folding box with display surface had its first commercial demonstration, so far as the testimony discloses, in the Thayer box, designed by John F. Carver, of that firm, in 1901, and placed on the market early in January, 1902. Some doubt is suggested as to the accuracy of Carver's recollection, because of a difference claimed to exist between the wings of the back surface in the illustration in the catalogue produced by Carver; but I shall take Carver's testimony as he gave it. The Carver or Thayer box, however, requires two printing operations, does not close tightly, and has not the adaptable front surface of the Singer, and, in addition, has a rigid rim over the blank space.

A Swiss patent issued to Seifenfabrik Helvetia and Alphonse Joseph Charpy, dated October 4, 1901, if construed as contended by defendant, is probably the nearest reference; but this patent lacks the element of the tongue or wings on the front display surface adapted to pass between the end of the box and its contents to hold the surface closed. Nothing is suggested in this patent as to a display surface, and, concededly, printing on the Swiss box could not be done in one operation.

In the Webb patent, United States letters No. 642,182, dated January 30, 1900, at least the same criticism may be made. In the Wilcox patent, United States letters No. 615,417, dated December 6, 1898, while the six *outward* faces could be printed on in one operation, the wings are missing, as in the Swiss patent.

The Davis patent, for oyster or berry pails, United States letters No. 692,990, dated February 11, 1902, had for its special object the forming of "a very close and tight-fitting top for the pail, to prevent the contents from leaking or spilling out," and is, in a sense, a complicated structure for so simple an art, and this because strength and tight fit were the sole objects in the mind of the inventor.

Of course, as has often been pointed out, the addition or omission of an element in a combination is often the best evidence of invention, and has frequently been the test of a high order of invention. In a seemingly easy art of this kind, it is now and then the slight change which counts, and which is the reason for the commercial success over prior paper patents or theoretical accomplishment.

The question of invention is close; but, interpreting the prior art in its most favorable light for defendant, Singer combined the little odds and ends, until he made an ingenious structure, which promptly became

a commercial success, because its advantages were plain to the shrewd up-to-date men, who use boxes of this general character for their merchandise.

Some emphasis is placed by defendant on the use of the word "parallel" in claim 3, when considered in its accurate geometrical sense; but patentees have troubles enough with words without whittling too much, and the position of the display surface when the box is open is "parallel" with the front wall for the purposes of the claim.

It will be understood, of course, that I am not passing on the scope of the claims, for I am not troubled by any question of infringement. What I do decide is that the claims are valid.

I may say, in conclusion, that the fair and brief fashion in which the suit was tried, within the limits of its real issues, together with the helpful illustrations of the two capable young experts, furnished an apt example of the advantage, in time and expense, of open court hearings in controversies as to simple constructions.

Complainant may have the usual decree.

